**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-5045

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MAURICE TERRELL GENERAL,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Dever III,
District Judge.  (5:05-cr-00125-D-ALL)

Submitted:  May 16, 2007          Decided:  July 10, 2007

Before WILLIAMS, Chief Judge, and NIEMEYER and TRAXLER, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois,
Assistant Federal Public Defender, Vidalia Patterson, Research and
Writing Attorney, Raleigh, North Carolina, for Appellant.  George
E.B. Holding, United States Attorney, Anne M. Hayes, Christine
Witcover Dean, Assistant United States Attorneys, Raleigh, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maurice T. General appeals the district court's order denying his motion to suppress. Finding no error, we affirm.

At 5:30 in the morning on September 25, 2004, Officer James Walker of the Fayetteville North Carolina Police Department met Officer John Fette at 116 Scott Avenue. The one story house at 116 Scott Avenue was known to both officers as it had been the site of numerous complaints of narcotics activity. Officer Walker testified that on his shift alone during the previous five or six months the police received over a dozen phone calls complaining of narcotics activity at the location. Moreover, the officers were aware of a prior narcotics arrest and a prior arrest related to a stolen vehicle at the address. Finally, the police had received several calls that shots had been fired all within a one-half mile radius of 116 Scott Avenue.

When the officers arrived, there were three or four cars parked in the grass area of the residence. Walker believed that one of the cars might be stolen or that drug activity might be occurring. Walker observed what appeared to be two unconscious black males in one of the vehicles. With Fette standing at the passenger side door, Walker knocked on the driver's side window, waking the driver. Walker then asked General, who was in the driver's seat, to step out of the car. Walker asked General if he was "okay." General stated he was fine. General then put his

- 2 -

right hand on his right thigh. Walker then became concerned General might have a weapon where he had placed his hand. Walker instructed General to place his hands on the car and attempted to pat him down. As Walker neared General's right thigh, General again took his right hand off the car and placed it next to his right thigh. Walker instructed General to place his hands back on the car; instead, General ran down Scott Avenue.

Walker and Fette pursued and captured General. While searching General, Walker discovered a loaded .38 caliber revolver and four individually wrapped rocks of crack cocaine in his right pocket. Fette also found five bullets in a black cap in his left pocket.

In the court below, General moved to suppress the gun, drugs and ammunition. After the district court denied General's suppression motion, he pled guilty to possession with intent to distribute cocaine base and carrying a firearm in relation to a drug trafficking crime and possessing it in furtherance of a drug trafficking crime, but reserved his right to challenge the denial of his suppression motion. This appeal followed.

We find that Walker's initial encounter with General was a consensual encounter. A consensual encounter between a police officer and an individual requires no reasonable articulable suspicion that a crime is occurring. Florida v. Bostick, 501 U.S. 429, 434 (1991). Whether an encounter is consensual is determined

by the totality of the surrounding circumstances.  <u>Id</u>., 501 U.S. at 437.  Factors relevant to this inquiry are "the time, place, and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen."  <u>United States v. Weaver</u>, 282 F.3d 302, 310 (4th Cir. 2002).

Officer Walker's purpose in knocking on the car window was to determine whether the two unconscious men were "okay." Moreover, the words Walker used in directing General out of the car, his tone of voice, and his general demeanor, all support the district court's ruling.  Although two officers were present, the mere fact that more than one officer was present does not eliminate the consensual nature of an encounter.  <u>See</u> <u>Bostick</u>, 501 U.S. at 437-38.  Also, there is no evidence that either of the officers compelled General to exit his vehicle by drawing their weapons or physically touching General.  Finally, there is no evidence that the officers activated their blue lights or parked their cars so as to prevent General from driving off.

We determine that a reasonable, innocent person in General's position would have felt free to decline the officers' request to exit the vehicle.  General's initial encounter with

Walker was a consensual one. Walker's request that General exit the vehicle was simply an extension of his knock on the window, and Walker did not seize General for Fourth Amendment purposes by virtue of his request.

In any event, at the time Walker asked General to step out of the vehicle, he possessed reasonable articulable suspicion of criminal activity. "An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). To establish reasonable articulable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. at 27) (internal quotations omitted)).

Here, the officers were at an address for which they had received no less than one dozen phone calls complaining of narcotics activity. One of the two officers had recently arrested an individual at the address for narcotics. Both officers were aware that another individual had recently been arrested at the address because of a stolen vehicle parked in the yard area. The officers had received prior complaints of gun fire in the immediate vicinity of the address. Also, based on prior experience with the address, Walker knew that the number of cars parked in the yard was

unusual.  Finally, the officers observed two unconscious men in a car in front of a suspected narcotics house at 5:30 in the morning. These facts provided reasonable suspicion to ask General to exit the vehicle.  See Wardlow, 528 U.S. at 125 (stating that the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior).  Accordingly, even if General's Fourth Amendment rights were implicated by the circumstances of the encounter, there were sufficient grounds for an investigatory stop.

We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED